UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT WILLIAMS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 18-12575-ADB |
| | * | |
| MINDY HULL, Chief Medical Examiner, | * | |
| | * | |
| Defendant. | * | |
| | * | |

## ORDER

BURROUGHS, D.J.

For the reasons state below, the Court dismisses this action for failure to state a claim upon which relief may be granted.

**I.     Background**

*Pro se* plaintiff Robert Williams brings this action under 42 U.S.C. § 1983 in which he asks that the Court order the Commonwealth's Chief Medical Examiner to amend the death certificate of the person of whose death Williams was convicted ("Victim"). The Victim's death certificate lists the cause of death as a stab wound to the skull, but medical records and subsequent litigation indicate that the skull wound caused a hematoma and that it was arguably malpractice by the physicians operating on the hematoma that ultimately resulted in the Victim's death. Williams now claims that the Victim presented at the hospital with no wounds and asserts that he has a due process right to have the death certificate amended because the death certificate and testimony of the then-medical examiner introduced at trial falsely stated that the Victim died of a stab wound to his head.

The Court assumes the reader's familiarity with the complaint and exhibits thereto [ECF No. 1], the Court's order directing Williams to show cause why this action should not be dismissed for failure to state a claim upon which relief may be granted [ECF No. 14], and Williams's response to the show cause order [ECF No. 16].

The crux of Williams's argument is as follows: (1) he is in possession of a newly-digitized version of an x-ray of the Victim's skull; this x-ray does not show any stab wounds to the head; (2) this x-ray is proof positive that the Victim did not suffer any stab wounds to the head; (3) therefore, the Victim did not die of a stab wound to his head; (4) because the digitized x-ray does not show any stab wounds to the head, Williams was wrongfully convicted of stabbing and killing the Victim; and (5) Williams has a due process right to have the death certificate amended to show that the Victim did not die of a stab wound to the skull.

## II. Discussion

### A. Allegation Concerning Evidentiary Value of the X-Ray Image

Williams's claim is based on the logical fallacy that the Victim could not have been stabbed because the x-ray did not show any evidence of the same. In his show cause response, Williams asserts that "the statements from all the doctors involved acknowledge[e] there was no fracture, no penetration of [the Victim's] skull." Show Cause Resp. at 7. He further alleges, "There was never any bleeding inside of [the Victim's] head because [sic] there never was any stab wound to his head." *Id.* at 8. While the documents on which Williams relies suggest that there is no x-ray evidence of a wound to the skull, they do not support the plaintiff's pronouncement that no such injury occurred.

For example, Williams claims the that affidavit of Dr. John H. J. Austin "supports [the plaintiff's] submission that there was no stab wound to the skull and brain." Compl ¶ 19. In the

2

affidavit itself, Dr. Austin expresses his opinion that the medical services performed by the radiologist who reviewed the x-ray image of the Victim fell below the standard of care. Dr. Austin's observation concerns a gross abnormality in the Victim's airway which the radiologist allegedly failed to report. Dr. Austin does state that "[t]he x-ray study [of the Victim] showed no evidence for abnormality at the base of the skull." Compl., Attach. 4 ¶ 6. That statement is not, however, the equivalent of a conclusion that there were no stab wounds to the skull or brain.

Likewise, Williams's assertion concerning the evidentiary value of the x-ray conflicts with the expert opinion of Dr. David Cullen. According to Dr. Cullen's affidavit, he was retained as an expert witness in the early 1980's in connection with the medical malpractice action brought by the Victim's widow. In the body of the complaint, Williams refers to Dr. Cullen's notes as "indicating that the cause of death of [the Victim] was not a stab wound to the skull and brain, but rather complications of a neck hemotoma [sic]." Compl. ¶ 10. Dr. Cullen does conclude in his notes that the Victim's immediate cause of death was not a stab wound, but he does refer to the Victim as a "43 year old male who suffered stab wounds to the head." Compl. Attach. 3-1. Dr. Cullen further states that "[n]eurologic deterioration [of the Victim] over night led to a CT scan showing a temporal lobe hematoma." *Id.* Dr. Cullen also reports that, "[o]n the assumption that this was a penetrating wound to the brain despite a negative skull x-ray, [the Victim] was planned for debriment [sic] and evacuation of the hematoma." *Id.* While Williams correctly asserts that Dr. Cullen observed the x-ray did not

3

show any fractures, he cannot simply ignore Dr. Cullen's statement that the Victim "suffered stab wounds to the head" and that a CT scan showed bleeding in the brain.[1]

The Court is not required to accept Williams's faulty logic or his erroneous characterization of the content of the attachments to his complaint. *See Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 27 (1st Cir. 2018) ("[I]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (alteration in original) (quoting *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014))); *id.* ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." (alteration in original) (quoting *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999))); *cf. BioChemics, Inc. v. AXIS Reins. Co.*, 924 F.3d 633, 644 (1st Cir. 2019) ("[I]f a pled claim is internally inconsistent with itself, the inconsistencies may cancel each other out and render the claim subject to dismissal for failure to state a claim." (alteration in original) (quoting *Hartford Cas. Ins. Co. v. Am. Dairy & Food Consulting Labs., Inc.*, Civil Action No. 09-CV-00914, 2009 WL 4269603, at *12 (E.D. Cal. Nov. 25, 2009))); *Cooperman v. Individual, Inc.*, 171 F.3d 43, 47-48 (1st Cir. 1999) (stating that only a conclusion that is "logically compelled, or at least supported, by the stated facts" is considered a "factual allegation" that may be credited for determining the sufficiency of a complaint).

---

[1] Williams also submitted notes from the deposition of Dr. Edward Cox, the neurosurgeon who was attempting to operate on the Victim when the Victim died. According to this document, Dr. Cox's examination of the Victim prior to the surgery "revealed multiple stab wounds, anterior and superior to the ear, one over the zygoma . . . . There was discoloration and swelling of the lower part of the face and the upper part of the neck [Dr. Cox] presumed from blood running down under the skin." Compl. Attach. 10.

### B. No Due Process Right to Amendment of Victim's Death Certificate

Even if the Court were to accept Williams's conclusion concerning the evidentiary value of the x-ray, his complaint fails to state a claim upon which relief may be granted because he does not have a due process right to the amendment of the Victim's death certificate.

The Due Process Clause of the Fourteenth Amendment "protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also* U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty or property without due process of law."). Williams maintains that he has "a protected liberty interest in [the correction of] the false death certificate of [the Victim]." Show Cause Resp. at 5. But this narrow definition of a liberty interest fails in this context. Rather, the relevant liberty interest is "to prove his innocence even after a fair trial has proved otherwise." *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 67 (2009). After a conviction, a defendant "has only a limited interest in postconviction relief." *Id.* at 69. A state's postconviction relief system is only subject to a constitutional challenge if it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or "transgresses any recognized principle of fundamental fairness in operation." *Id.* (internal quotation marks omitted).

Here, Williams has not alleged, nor can the Court infer, that the Massachusetts system of postconviction relief, *see* Mass. R. Crim. P. 30, is constitutionally infirm. Williams's inability to procure desired relief through such procedure does not render it defective.[2]

---

[2] Despite Williams's repeated characterization of the x-ray as "new," he raised the lack of radiographic evidence of any penetrating wound to the Victim's skull in a 2007 petition for a writ of habeas corpus. *See Williams v. O'Brien*, Civil Action No. 07-11920-PBS (D. Mass.).

5

**III. Conclusion**

Accordingly, for the reasons stated above and those set forth in the Court's April 18, 2019 memorandum and order [ECF No. 14], the Court orders that this action be DISMISSED for failure to state a claim upon which relief may be granted.

**SO ORDERED.**

July 26, 2019  /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

---

Williams asserted therein that "[t]he late arriving evidence proves beyond all doubt that there was no penetration of the skull or brain by knife or any other instrument, and that Mr. Roberts died as a result of reckless conduct by attending doctors and that the medical examiner gave complete false information to the jury as well as the grand jury concerning the case and manner of death. Medical Tribunal records, X-rays and tomography scans show that the victims [sic] skull was never penetrated by a knife or anyother [sic] instrument." *Id.*, [ECF No. 1] at 6. Williams also represented that he raised this issue in a state court motion for a new trial, which was denied on December 18, 2006. *Id.* at 4. On August 21, 2008, the Court denied the petition. *Id.* [ECF No. 38].